NATIONAL LABOR RELATIONS
BOARD, Petitioner,
v.
THOMPSON RAMO WOOLDRIDGE,
INC., Respondent.

No. 13554.

United States Court of Appeals
Seventh Circuit.

July 17, 1962.

Marcel Mallet-Prevost, Asst. Gen. Counsel, Margaret M. Farmer, Attorney, National Labor Relations Board, Washington, D. C., Stuart Rothman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Rosanna A. Blake, for petitioner.

Eugene B. Schwartz, Edward J. Simerka, Stanley, Smoyer & Schwartz, Cleveland, Ohio, for respondent.

Before SCHNACKENBERG, KNOCH and KILEY, Circuit Judges.

KILEY, Circuit Judge.

This is a petition under § 10(e) of the National Labor Relations Act [1] by the National Labor Relations Board for enforcement of its order, against respondent, to cease and desist from unfair labor practices in violation of the Act; and to take affirmative "remedial action."

Respondent's home office is in Cleveland, Ohio. Its Dage Television Division is located in Michigan City, Indiana. In 1956 Dage employees, with help of respondent's officials, organized the Dage Employees Association. Early in 1960 Dage employed about sixty hourly employees and about 125 salaried employees, all of whom, including supervisors and officers, "with at least 30 days seniority," were members of the Association. On January 19, 1960 the Teamsters Union [2] distributed leaflets to respondent's employees. This activity grew into the events subject of the NLRB complaint and the order before us.

The Teamsters filed the charges upon which the Board's complaint against respondent issued. The relevant issues, made by the Board's complaint and respondent's answer, before the trial examiner were (a) whether respondent violated § 8(a) (1) [3] of the Act by interrogating employees about union activities and by prohibiting union solicitation on company premises at all times; (b) whether it discharged employee Rachel Treece in violation of § 8(a) (3): [4] and (c) whether the Association was a "labor organization" dominated and supported by respondent in violation of § 8(a) (2). [5] Upon the "basically admitted facts" the trial examiner decided the issues against respondent. The Board adopted the findings, conclusions and recommendations of the trial examiner, except the recommendation as to Rachel Treece, [6] and entered the order sought to be enforced.

The first question is whether the Board erred in concluding that respondent violated § 8(a) (1) [7] of the Act by interrogating employees concerning their union activities: and in promulgating "an unduly broad no-solicitation rule."

The trial examiner considered this alleged violation in the context in which the questions were addressed to employees. This was proper under decisions of this court that the questions "cannot be considered as isolated words cut off from the relevant circumstances and background." N. L. R. B. v. Kropp Forge Co., 7 Cir., 178 F.2d 822, 827–829 (1949), cert. denied, 340 U.S. 810, 71 S.Ct. 36, 95 L.Ed. 595 (1950); N. L.

---

1. 29 U.S.C.A. § 160(e) (Supp.1961).

2. General Teamsters, Chauffeurs & Helpers, Local Union No. 298.

3. 29 U.S.C.A. § 158(a) (1).

4. 29 U.S.C.A. § 158(a) (3) (1961 Supp.).

5. 29 U.S.C.A. § 158(a) (2).

6. The Board originally ordered Rachel Treece reinstated in employment and made whole as to lost pay. This was stricken, and the final corrected order shows that Rachel Treece rejected reinstatement and was made whole.

7. § 8(a) "It shall be an unfair labor practice for an employer—
 "(1) To interfere with, restrain or coerce employees in the exercise of the rights guaranteed in section 7." 29 U.S. C.A. § 158.
 § 7. "Employees shall have the right to self-organization, to form, join or assist labor organizations, * * *." 29 U.S.C.A. § 157.

R. B. v. Wagner Iron Works, 7 Cir., 220 F.2d 126, 139–140 (1955), cert. denied, 350 U.S. 981, 76 S.Ct. 466, 100 L.Ed. 850 (1956).

The relevant circumstances and background are the distribution by the Teamsters of the leaflets to respondent's employees on January 19, 1960; the Dage plant manager's immediate call to the home office in Cleveland; respondent's personnel director's arrival at Dage the next day and his conference with Dage officials; Dage Manager Lahey's notice, that day, to the employees through two "line foremen," Dalman and Cloud, of "last night's unfortunate incident of the Teamsters Union's attempt to organize." The notice stated the "unenviable reputation" of the Teamsters, that there was no necessity for "any outside union entering into our relationships," and that management's "position in this matter" would be expressed in a letter to the employees. The next day each employee received a letter denouncing the motives of the Teamsters and inviting employees to bring their complaints and problems "in the open": and if the "outside union" approached you "tell him" "how you feel." It was at this time that Dalman spoke to "several women employees." "I asked, 'Where do we stand with the Union'" or "what did the girls think of the union." Later he talked to other women and asked them what they thought of the union's chances.

January 28, Manager Lahey called a meeting of the Association Board to discuss the Teamsters "matter" openly, and it was decided to amend the Association Charter. February 5 a notice was posted stating management had learned that "solicitation for fund raising * * * and organizational memberships, had become more frequent in recent weeks," and prohibiting "any unauthorized solicitations for any purpose on company time or on company property." February 17 Mrs. Treece, who had passed union applications to fellow employees, was discharged.

We think the Board's conclusion from these undisputed facts that respondent violated § 8(a)(1) of the Act by interrogation of its employees is not erroneous. The question of the prohibitory rules is not argued because respondent admitted the prohibition was a violation and applied the proper remedy.

Cases cited by respondent are not persuasive. In N. L. R. B. v. Arthur Winer, Inc., 7 Cir., 194 F.2d 370, 373 (1952), there was a "serious question" of the sufficiency of evidence to sustain many findings of the examiner. In Sax v. N. L. R. B., 7 Cir., 171 F.2d 769 (1948), and N. L. R. B. v. Armour & Co., 5 Cir., 213 F.2d 625 (1954), the "perfunctory, innocuous remarks" stood "alone". And in N. L. R. B. v. Pecheur Lozenge Co., Inc., 2 Cir., 209 F.2d 393 (1953) the questions were of "trivial consequence." N. L. R. B. v. Columbus Iron Works Co., 5 Cir., 217 F.2d 208 (1954) concerned a connection between an employee's discharge and the questions of "only one of respondent's fifty supervisors." And in N. L. R. B. v. Peerless Products Co., 7 Cir., 264 F.2d 769 (1959) the employers told employees they could have a union if they wanted one and the court thought that the questions asked were not intended to, and did not, interfere with employee rights.

The next question is whether the Board erred in concluding that the Association was a labor organization within the meaning of § 2(5)[8] of the Act.

The admitted and undisputed evidence showed consultation by Lahey with the Association Board of Representatives about their preference for a paid holiday; and that Personnel Officer Watkins agreed to investigate a griev-

8. "The term 'labor organization' means any organization of any kind, or any agency or employee representation committee or plan, in which employees participate and which exists for the purpose, in whole or in part, of dealing with employers concerning grievances, labor disputes, wages, rates of pay, hours of employment, or conditions of work." 29 U.S. C.A. § 152(5).

ance over failure of an employee to receive a wage rate presented by the Board of Representatives. There was also in evidence the company's printed policy "Do You Have A Grievance" outlining steps to be taken on grievances and "You are entitled to have a fellow employee accompany you, if you feel it will help you in explaining your case." And there is evidence that respondent's officials sometimes discussed grievances with representative committees as individuals representing employees. The Board concluded that respondent recognized that a function of an employees association was presentation of individual grievances, and that this function was enough to justify the finding that the Association was a "labor organization."

We cannot say that the Board's conclusion that the Association was a "labor organization" is erroneous. The conclusion is supported by the rule in National Labor Relations Board v. Cabot Carbon Co., 360 U.S. 203, 213, 79 S.Ct. 1015, 3 L.Ed.2d 1175 (1959), "that these Committees existed, at least in part, for the purpose 'of dealing with employers concerning grievances * * *.' This alone brings these Committees squarely within the statutory definition of 'labor organizations.'" True, in that case the committees made recommendations and here there is no evidence of recommendations being made. But express recommendation is not essential to "dealing," if discussion between respondent and the Association Board was designed to remedy grievances.

We see no merit in respondent's argument that there was insufficient evidence of employee participation in the Association to justify the conclusion that it was a "labor organization" under the Act. We think the facts that all employees, of at least thirty days duration, are members and have the right to vote for the Association Board which carries on the discussions with respondent's officials is enough. The conclusion is not erroneous and is consistent with the decision in Schultz v. N. L. R. B., 109 U.S.App.D.C.

120, 284 F.2d 254 (1960). Respondent's argument relies too much on its own "written and spoken words" as to the Association purpose. It is what was done by the Association with respondent that determines its real purpose.

Finally, the record supports the Board's conclusion that respondent supported the Association, dominated and interfered with the administration of the Association, and contributed financial and other support to it in violation of § 8(a) (2).

■ The Association representatives met on respondent's premises and time, with respondent's officials present, under form of by-laws supplied by respondent: respondent supplied stationery and clerical services: respondent's officials were entitled to vote for Association Board Members and to serve on election committees: and the Association treasury was derived from respondent's share of proceeds of vending machines. Respondent argues, with support of cases, each of these several facts separately, to show that each does not constitute a violation. The question is not whether each individual fact is a violation, but whether the facts taken together justified the Board's conclusion. There is substantial evidence of interference by the respondent, Local 636, etc. v. N. L. R. B., 109 U.S.App.D.C. 315, 287 F.2d 354, 361 (1961); and the conclusion based on the undisputed evidence is not erroneous. Cf. Hotpoint Co. v. N. L. R. B., 7 Cir., 289 F.2d 683, 686 (1961).

Respondent contends that the general scope of the cease and desist order is too broad. We agree.

■■ In the event of violation of the order respondent might be subject to contempt proceedings, and for that reason should know in advance specifically what conduct it is ordered to stop. National Labor Relations Board v. Express Publishing Co., 312 U.S. 426, 61 S.Ct. 693, 85 L.Ed. 930 (1941). Paragraph 1(e) orders respondent to cease and desist from "in any other manner interfering with, restraining, or coercing

employees in the exercise of their rights as guaranteed by Section 7 of the Act." The order should be limited to the unlawful conduct in issue before the Board. Ibid.; Reliance Mfg. Co. v. N. L. R. B., 7 Cir., 125 F.2d 311 (1941). We think that paragraph of the order is too broad and should be stricken.

 Furthermore, the order should be limited to respondent's Dage Television Division. Reliance Mfg. Co. v. N. L. R. B., 7 Cir., 125 F.2d 311 (1941); N. L. R. B. v. Ford Motor Co., 7 Cir., 119 F.2d 326 (1941). However, inasmuch as respondent's Cleveland officials participated in the unlawful conduct, the Board was not unreasonable in requiring notices to be signed by Thompson Ramo Wooldridge, Inc.

The order is modified in the two aspects noted, and as modified will be enforced.