NATIONAL LABOR RELATIONS
BOARD, Petitioner,

v.

GENERAL INDUSTRIES ELECTRON-
ICS COMPANY, Respondent.

No. 19030.

United States Court of Appeals
Eighth Circuit.

Sept. 27, 1968.

Burton L. Raimi, Atty., N.L.R.B., Washington, D. C., for petitioner; Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen., Counsel, Marçel Mallet-Prevost, Asst. Gen. Counsel, and Elliott Moore, Atty., N.L.R.B. on the briefs.

James W. Moore, of Smith, Williams, Friday & Bowen, Little Rock, Ark., for respondent; B. S. Clark, Little Rock, Ark., on brief.

Before MATTHES, LAY and HEANEY, Circuit Judges.

HEANEY, Circuit Judge.

The National Labor Relations Board petitions this Court for enforcement of its order against the General Industries Electronics Company. The Board's decision is reported at 163 NLRB 12, 64 LRRM 1276 (1967). The Board found that the Company had violated Section 8(a) (1) of the Act by maintaining a rule prohibiting distribution of literature

in its parking lot without prior permission, and by threatening reprisals if the Union [1] won a scheduled election. The Board also found that the Company had violated Section 8(a) (3) and (1) of the Act by discriminating against four employees because of their membership in and activities on behalf of the Union. We enforce the order insofar as it relates to discrimination against the four employees, but decline to otherwise enforce it.

## THE RULE PROHIBITING DISTRIBUTION OF LITERATURE IN THE PARKING LOT.

The Company opened its plant in 1960.[2] From that date to the present, a sign was posted at each entrance and exit: "No distribution of handbills without prior approval."

In 1965, the Union began organizing the employees. Employees distributed Union leaflets at the entrance to the Company's parking lot and inside the plant during non-working hours. At one of the meetings, it was suggested that employees distribute literature in the parking lot. The Union agent reminded the employees of the sign posted at the entrance and exits and suggested that permission was needed to distribute literature in the lot. No one requested such permission or undertook distribution without consent.

---

1. International Union of Electrical, Radio and Machine Workers, AFL–CIO.

2. Since 1960, the Company has been the object of several unionization efforts. On four different occasions, representation elections have been held, one in 1961 with the International Union of Electrical, Radio and Machine Workers, AFL–CIO (IUE) on the ballot, one on September 27, 1963, and in May, 1964, with the International Brotherhood of Electrical Workers, AFL–CIO (IBEW), and one of January 12, 1966, with both the IUE and the IBEW on the ballot. These organizational attempts have involved several unfair labor practice charges. In 1962, on a charge filed by the IUE, the Board issued a decision and order finding that the Company had engaged in unfair labor practices within

the meaning of Section 8(a) (1) of the Act by maintaining plant rules which prohibited solicitation and distribution on Company premises without specific authorization. Case reported in 138 NLRB 139, 51 LRRM 1206 (1962). The Company modified its rules and was informed by the Regional Director that the revised rules appeared acceptable. The Company then notified the employees of the revised rules by posting them.

In 1964, the Company was charged with interfering with the 1963 election by his campaign speeches, letters and posters. The Board, with one member dissenting, set the election aside and ordered a second election to be held. The Board's opinion is reported in 146 NLRB 115, 56 LRRM 1015 (1964).

The Board asserts that the rule prohibiting distribution of handbills on the parking lot without permission is invalid as no evidence of special circumstances was offered indicating it was needed to maintain production or discipline. See, Jas. H. Matthews & Co. v. N.L.R.B., 354 F.2d 432 (8th Cir.), cert. denied 384 U.S. 1002, 86 S.Ct. 1924, 16 L.Ed.2d 1015 (1966); Republic Aviation Corp. v. N.L.R.B., 324 U.S. 793, 65 S.Ct. 982, 89 L.Ed. 1372 (1944). The Company, on the other hand, asserts that the General Counsel had the further burden of proving the absence of an alternative means of communication between the Union and its members and that it had failed to sustain the burden. N.L.R.B. v. United Steelworkers of America, CIO, 357 U.S. 357, 78 S.Ct. 1268, 2 L.Ed.2d 1383 (1958).[3]

It is unnecessary for this Court to determine here whether the General Counsel had this additional burden. The Company previously had relinquished its right to require employees to seek permission before soliciting or distributing literature in all non-working areas. General Industries Electronics Company, 138 NLRB 139, 51 LRRM 1206 (1962). In that proceeding, the Company was charged with and found guilty of maintaining an illegal no-distribution rule. The Company was required to modify its earlier rules relating to solicitation and to the distribution of literature.[4] The new rules prohibited:

"6. Soliciting of any kind, or collecting contributions for any purpose on company property during working time without authorization of the Industrial Relations Department."

"11. Distributing literature in working areas at any time without authorization of the Industrial Relations Department."

In submitting the new rules to the Board for approval on November 6, 1962, the Company wrote:

"Please note that in Rule 6 the soliciting is limited only to an employee's working time. Also, please note that distribution of literature is only prohibited in working areas, which means that an employee is free to distribute literature in non-working areas at any time."

The Board approved the rules as written.

■ In our view, the parking lot is a non-working area and the employees are free to solicit or to distribute Union literature in it without requesting permission of the Company. The only limitations being that the distribution or solicitation be made on the employees' own time.

---

3. The Fifth Circuit, in Republic Aluminum Co. v. N. L. R. B., 394 F.2d 405 (5th Cir. 1968), faced this issue. The Court framed this issue as follows: "In an unfair labor practice proceeding, brought by the union on the ground that the company enforced a rule prohibiting entry on plant property without permission to discipline off-duty employees distributing union literature in the company parking lot, does the general counsel have the burden of showing that there were insufficient alternative means of communication between the union and the employees." Id. at 406. The Court answered in the negative saying: " * * * that the presumption of illegality of the no-solicitation rule can be overcome only by a showing 'that special circumstances make the rule necessary in order to maintain production or discipline.' There is no requirement that in the absence of such proof the burden is then on the general counsel also to show that there was a lack of sufficient alternative means of solicitation." Id. at 408.

4. The rules in effect before the Board proceeding prohibited: "Soliciting of any kind, or collecting contributions for any purpose whatsoever on Company premises without the specific authorization of the Industrial Relations Department. * * * "Distributing of literature of any kind on Company property or posting or removal of notices, signs or writing in any form on bulletin boards on Company property at any time without specific authority of the Industrial Relations Department."

### THREATS OF REPRISAL.

Virginia Clark, an employee, testified: that Charles McClure, a maintenance foreman, told her, on the day of the representation election, that if the Union came in, the employees would no longer be able to leave work areas and go to the bathroom; that she repeated the statement to other employees; that the foreman returned to her work area a short time later and asked why she had reported their conversation to the other employees, and stated that it was his word against hers; and that she did not believe that the foreman had authority to close the bathrooms and told him so.

McClure denied making the statements. No other testimony was offered or received.

The Board credited the employee's testimony and found that the foreman's conduct constituted interference within the meaning of Section 8(a) (1) of the National Labor Relations Act. 29 U.S. C.A. § 158(a) (1).

The Company contends that the Board erred in crediting Mrs. Clark's testimony and in holding that the foreman's conduct could serve as a basis of an 8(a) (1) charge against it.

■■■ We hold that the Board did not err in crediting the employee's testimony:

> " * * * 'the question of credibility of witnesses and the weight to be given to their testimony' in labor cases is primarily one for the determination by the trier of facts. * * *."

N.L.R.B. v. Morrison Cafeteria Co. of Little Rock, Inc., 311 F.2d 534, 538 (8th Cir. 1963); Marshfield Steel Company v. N.L.R.B., 324 F.2d 333, 336 (8th Cir. 1963). There is nothing in this record calling for a departure from the general rule.

The Board did err, however, in holding that the foreman's conduct could properly serve as a basis for a charge of interfering.

■ The Supreme Court has laid down a two-fold test to be used in determining whether supervisory conduct constitutes interference: (1) are the words or deeds of the supervisory employee, taken in their setting, reasonably likely to restrain the employee's choice; (2) may it fairly be said that the employer is responsible for them? N.L. R.B. v. Link-Belt Co., 311 U.S. 584, 599, 61 S.Ct. 358, 85 L.Ed. 368 (1941). See, N.L.R.B. v. Collins & Aikman Corp., 338 F.2d 743, 748 (5th Cir. 1964); National Labor Relations Bd. v. Illinois Tool Works, 153 F.2d 811, 814 (7th Cir. 1946).

■ We do not believe that the General Counsel has sustained the burden of proving either. The foreman had no responsibilities in the labor relations area. There is no showing that the Company, its officers or those concerned with industrial relations, either knew or ought to have known, that he would make a foray into the election campaign. Nor is there evidence indicating that he was encouraged, tacitly or otherwise, to do so.

The statements made by the foreman were isolated ones which were so unbelievable on their face that it is not reasonably likely that they restrained the employees in their choice.

■ While the question of whether language or conduct constitutes interference is ordinarily one for the specialized expertise of the Board, Daniel Construction Company v. N.L.R.B., 341 F.2d 805 (4th Cir.), cert. denied 382 U.S. 831, 86 S.Ct. 70, 15 L.Ed.2d 75 (1965), the interference must have support in the record as a whole. It is not so supported here.

### DISCRIMINATION AGAINST THE FOUR EMPLOYEES.

■ We have reviewed the evidence and believe that it supports the finding of the Board that the Company violated Section 8(a) (3) of the Act by disciplining four employees who attended the representation hearing. The Company was notified that the employees would be absent from work to attend the hearing, yet it orally reprimanded the employees for failure to give notice of their

absence. It indicated on its daily attendance sheets and time cards that the employees had been absent without notice; and in the case of two employees, gave them a second reprimand and marked their permanent records with an unexcused absence.

Company rules require employees to notify the Personnel Office of intended absences. As a matter of practice, however, the Company has not required that this notice be personally given by the employees. Notice to a supervisor or to the office by a third party has satisfied the rule.

In this instance, the Union agent called the Personnel Manager, intending to inform him that the employees would be absent. The manager was not available, and the agent gave the message to the Plant Manager. The Plant Manager told the agent that the employees should notify their supervisors. After some argument, however, the Plant Manager agreed to take care of the matter, and did so. Two of the employees also reported to their supervisors that they would be absent from work on the date of the hearing.

On the day of the hearing, the four employees did not report to work. Their cards were brought to the Personnel Office and marked in a manner indicating that their absences were unexcused. The absentee list was posted in three locations in the plant.

The morning after the hearing, the four employees discovered the marks on their time cards and asked for an explanation. The Company informed them that they had not followed the proper procedure.

The personnel records of the two employees who reported to their supervisor were changed after protest, but neither was informed of that fact. However, the notations opposite their names on the absentee list were changed. The Company refused to correct the record of the other two employees. The two were summoned to the Personnel Office and again reprimanded for not following the appropriate procedures. They were told that the absences would remain on their permanent record. They protested and were again admonished by the Company.

We are convinced that, on the basis of this evidence, the Board's determination was proper. Since the time cards were visible to all employees, the Company's failure to change them served as a continuing warning that those who engaged in Union activities would be unfairly treated.

While two of the employees did not follow the exact procedures outlined in the employees' handbook, they substantially complied with its provisions. The Company's basic concern of notice of an intended absence was satisfied, particularly in view of the fact that the Company admitted that the rule had never been strictly interpreted or enforced. The demand for strict compliance here is more consistent with antipathy for Union activity than concern over plant rules. Time-O-Matic, Inc. v. N.L.R.B., 264 F.2d 96, 102 (7th Cir. 1959).

This matter is remanded to the National Labor Relations Board for action consistent with this opinion.