**MASON & HANGER–SILAS MASON
CO., Inc., Petitioner,**

v.

**NATIONAL LABOR RELATIONS
BOARD, Respondent.**

No. 25420.

United States Court of Appeals
Fifth Circuit.

Dec. 11, 1968.

S. Tom Morris, Gibson, Ochsner, Harlan, Kinney & Morris, Amarillo, Tex., for petitioner.

Marcel Mallet-Prevost, Asst. Gen. Counsel, Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Robert E. Williams, Michael N. Sohn, Attys., NLRB, Washington, D.C., for respondent.

Before RIVES and DYER, Circuit Judges, and MEHRTENS, District Judge.

RIVES, Circuit Judge:

Mason & Hanger-Silas Mason Co., Inc. (Company herein) petitions, pursuant to 29 U.S.C.A. § 160(f), for review of an order of the National Labor Relations Board (Board herein). The Board cross-petitions for enforcement of its order.[1] 29 U.S.C.A. § 160(e). The

---

1. The Board adopted as its order (with a minor change indicated herein) the Recommended Order of Trial Examiner Rosanna A. Blake:

"Respondent, Mason & Hanger-Silas Mason Co., Inc., its officers, agents, successors and assigns shall:

"1. Cease and desist from:

"(a) Questioning employees concerning their Union activity on Company time, keeping their Union activity on Company time under surveillance, and confiscating any union material found in their desks or places of work unless

questions presented by these petitions involve the application of a contractual prohibition against solicitation and the maintenance of a no-solicitation rule.

The Company and the Atomic Energy Commission operate by contract the Pantex Plant at Amarillo, Texas. Since 1952 the Metal Trades Council of Amarillo, Texas, and Vicinity, AFL-CIO (MTC herein) has been the exclusive bargaining agent at the plant. The Company and MTC's affiliate, the Office and Professional Employees International Union, Local 306, AFL-CIO (Union herein) were functioning under a collective bargaining contract at all relevant times.[2]

On March 31, 1966, between noon and 1:00 P.M., Lenore Fox, an employee in the General Stores Department and recording secretary of the Union, passed an envelope to Tom Dennis, a stockman in the same department and a member of the Union's membership committee. Maurice Kernion, a plant supervisor, observed the incident and mentioned it immediately to Foreman Rubin A Covey, Jr. Covey later went to Dennis' work station and, in the absence of Dennis examined the contents of the envelope. It contained Union personnel lists not pertinent to Company business. Covey told Dennis of the contents of the envelope, took it away from Dennis, and went to see Labor Relations Manager Carl Smith and Division Manager Donald House. Fox was then interrogated around 3:00 P.M. Later, Company officials searched Fox's work station and she turned over to them some Union materials in her possession. On April 14, 1966—after the Union unsuccessfully sought information from the Company about this incident—Fox was subjected to another Company investigation. On May 3, 1966, the Company held an "advisory discussion" with Dennis (and noted this fact on his employment record). On the same day the Company held a similar, but more serious and formal, discussion with Fox (noting on her record that she was officially reprimanded).[3]

it customarily takes or would take the same action if the employees, the activity, and the material were unrelated to the Union.

"(b) Promulgating [now Maintaining] and enforcing a rule which prohibits Union organizational activity on Company property on the employees' own time.

"(c) In any like or related manner interfering with, restraining, or coercing its employees in the exercise of the rights guaranteed them by Section 7 of the Act.

"2. Take the following affirmative action which is necessary to effectuate the policies of the Act.

"(a) Physically remove from the personnel records of employees Lenore Fox and Thomas Dennis the notations which were a direct result of Respondent's illegal conduct on March 31.

"(b) Post at its plant in the vicinity of Amarillo, Texas, copies of the notice attached hereto and marked Appendix A. Copies of said notice to be furnished by the Regional Director for the Sixteenth Region shall, after being duly signed by an authorized representative of the Respondent be posted by it immediately upon receipt thereof and maintained by it for a period of 60 consecutive days thereafter in conspicuous places, including all places where notices to employees are customarily posted. Reasonable steps shall be taken by the Respondent to insure that said notices are not altered, defaced, or covered by any other material.

"(c) Notify the Regional Director for the Sixteenth Region, in writing, within 20 days from the receipt of this Decision and Recommended Order what steps it has taken to comply herewith."

2. With the exception of the period from April 12, 1966 to May 4, 1966, a collective bargaining contract had governed employer-employee relations for about 10 years. At the time of the envelope passing, the 1963 contract between the Company and the Union was in effect by oral extension.

3. The Union filed a charge on April 9, 1966 with the Board alleging a violation of § 8(a)(1). On May 9, 1966, the Board filed a complaint against the Company which the latter answered on May 13, 1966. The complaint charged violation of § 8(a)(1). A hearing was held in Amarillo, Texas, on July 6, 7, 8, 1966, and the Trial Examiner issued her decision on May 5, 1967, to which the Com-

Three major issues are presented by the petition and cross-petition.

## I.

*The No-solicitation Rule.* The complaint by the General Counsel charged, *inter alia:*

> "The Respondent has maintained, promulgated, and enforced a rule which prohibits employees, during nonworking time, from soliciting other employees to affiliate with the Union and which prohibits employees from distributing Union literature during nonworking time in nonworking areas."

This complaint, together with the finding of the Trial Examiner that: "Respondent violated Section 8(a) (1) of the Act by promulgating and enforcing a rule which prohibits Union organizational activities on Company property on the employees' own time," sufficiently brings into issue the maintenance of the no-solicitation rule.[4]

 Such a broad rule is presumed invalid unless the company comes forward with special circumstances justifying the existence of such breadth. In the Matter of Peyton Packing Company, Inc., 49 N.L.R.B. 843, enforced, 5 Cir. 1944, 142 F.2d 1009; Republic Aviation Corp. v. NLRB, 1945, 324 U.S. 793, 794, 65 S.Ct. 982, 89 L.Ed. 1372. See cases collected in Republic Aluminum Company v. NLRB, 5 Cir. 1968, 394 F. 2d 405, 408 (en banc). Here, the Company made no showing that circumstances mandated such a broad rule. In-

deed, the Company's brief admits that the rule in existence on March 31, 1966 was overbroad. Its admission and subsequent change of the rule, however, does not estop the Board from ordering that no such rule be maintained or enforced *in futuro.* Cf. NLRB v. Walton Mfg. Co., 5 Cir. 1961, 289 F.2d 177, 180. Even if a new and properly narrow rule exists at this time, the Board's order with respect to maintenance and enforcement of no-solicitation rules is proper. NLRB v. Lexington Chair Company, 4 Cir. 1966, 361 F.2d 283, 286 and 295; G & W Electric Specialty Co. v. NLRB, 4 Cir. 1966, 360 F.2d 873, 874. Cf. Labor Board v. Mexia Textile Mills, 1950, 339 U.S. 563, 567, 70 S.Ct. 833, 94 L.Ed. 1067. Since we approve the practice of the Fourth and Seventh Circuits insofar as the cases there implicitly hold that a company cannot inhibit the Board's cease and desist power by merely narrowing an overbroad no-solicitation rule, we enforce paragraph 1(b) of the Board's order.

## II.

 *Company Actions Against Fox and Dennis.* Whether the Company violated section 8(a) (1) in reprimanding the two employees involved in the passing of the envelope is not controlled by the Company no-solicitation rule. Rather, the governing principle is the contractual prohibition against solicitation.[5] At issue is the inevitable conflict between two declared national labor policies— the fostering of collective bargaining and

---

pany took exception on June 7, 1967. The Board reviewed the case and issued its decision October 19, 1967. Mason & Hanger v. O.P.E. Local 306, 167 N.L.R.B. No. 122 (1967). The petition for review and cross-petition for enforcement were thereupon timely made to this Court.

4. "Never Conduct any Outside Business on the Reservation without permission. This rule applies, for example, to all solicitations, membership drives, circulating petitions, union organizing activities, pledges and collecting money."

5. "Article XXIX.
"Conducting Council Business on Company Time.
"Section 1. Council members shall not carry on any Council activities during their working hours except as provided for in this Agreement.
"Section 2. No type of Council business shall be conducted on Company time except:
"a. Investigation of grievances.
"b. Conferring with Company representatives, including collective bargaining.
"c. Posting and removal of Council notices on Council bulletin boards."

the free exercise of individual rights. See 29 U.S.C.A. § 151 and American Communications Ass'n v. Douds, 1950, 339 U.S. 382, 387, 70 S.Ct. 674, 94 L.Ed. 925. To disregard the contractual prohibition against solicitation here would seriously undermine Congress's attempt to solve our national labor problems and place the Board and the courts in the positions of super-legislators. Within well-defined constitutional and statutory limits, the parties to a collective bargaining agreement lay down the supreme law of the relationship between employer and employee. And that this "law-making" is accomplished in derogation of section 7 rights is not necessarily violative of the Labor Management Relations Act. NLRB v. Allis-Chalmers Mfg. Co., 1967, 388 U.S. 175, 180, 87 S.Ct. 2001, 18 L.Ed.2d 1123.

■ In NLRB v. Mid-States Metal Products, 5 Cir. 1968, 403 F.2d 702, this Court examined no-solicitation rules in terms of the twin national labor policies discussed above. The Court in *Mid-States* held that a contract rule prohibiting solicitation on working and nonworking times could not stand because the "individual contractual rights at issue" were "too fundamental" to be contracted away by the union. *Mid-States*, supra p. 706. The case at bar, however, is clearly distinguishable on its facts from *Mid-States*. The contract clause *sub judice* concerns a prohibition against solicitation *only* on working time. Moreover, the "specific § 7 rights involved" in *Mid-States* related to the selection or nonselection of a bargaining agent. The instant case, on the other hand, concerns activity for the purpose of economic advantage. Consistent with the rationale of *Mid-States,* we feel that the interests of contractual stability sufficiently outweigh considerations of individual rights in this case so as to make appropriate, where applicable, the enforcement of the contractual prohibition against solicitation.

■ As to Fox, there is substantial evidence on the record as a whole to support the finding of the Trial Examiner that "Fox's lunch hour was over when she handed the envelope to Dennis." Universal Camera Corp. v. NLRB, 1950, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456. Since Fox violated the contract clause on working time, the Company was privileged reasonably to reprimand her and note such reprimand on her employment record. We therefore deny enforcement of the Board's order as to Fox.

■ As to Dennis, we cannot say that on the record as a whole the Board's finding that Dennis was on nonworking time is unsupported by substantial evidence. Universal Camera Corp., supra; NLRB v. Whitfield Pickle Company, 5 Cir. 1967, 374 F.2d 576, 581–582. Although Dennis was on his own time when the envelope passed to him, the Company did not violate section 8(a)(1) by holding an advisory discussion with him and noting such discussion on his personnel record. Dennis's conscious acceptance of the envelope from an employee who was on Company time transgresses Article XXIX of the contract no less than if Dennis were on Company time. The plain meaning of the contract language, which is phrased in the plural, comprehends the situation where one or more of the parties to a transaction is on Company time. Were it shown that Dennis was a totally passive victim of circumstances, then his actions would not have violated the contract. However, the record supports an inference of consciousness on Dennis's part that Union business was being transacted on Company time. We hold that the Company did not violate section 8(a)(1) by reprimanding Dennis, who was on his own time, for transacting Union business with Fox who was on Company time. This holding is supported by the recent case of Campbell Soup Co. v. NLRB, 5 Cir. 1967, 380 F. 2d 372, 373, where we prohibited the use of a no-solicitation rule only when both the soliciting *and* solicited employees were on nonworking time. En-

**6**

forcement of the Board's order as to Dennis is therefore denied.

## III.

 *Disparate Enforcement of Solicitation Restrictions.* Contrary to the assertions of the Company, we find that paragraphs 7 and 8 of the complaint sufficiently charge the Company with disparate enforcement of valid working time prohibitions against solicitation. The Company also asserts that 8(a) (3) is the only section under which a charge of discrimination can be subsumed. However, we feel that 8(a) (1) can be the basis of a charge of disparity of treatment when it is alleged that such treatment is rooted in anti-union feelings rather than in an effort to maintain plant production and order. United Steelworkers of America v. NLRB, D.C. Cir. 1968, 393 F.2d 661, 663; Revere Camera Co. v. NLRB, 7 Cir. 1962, 304 F.2d 162, 165; NLRB v. Electro Plastic Fabrics, Inc., 4 Cir. 1967, 381 F.2d 374, 376.

The question before us is whether the Board proved that when the Company surveilled, interrogated and confiscated materials belonging to Fox it acted outside the scope of its legitimate authority over maintaining production and discipline. The burden of proving its allegations is on the Board and does not shift during the course of an action. NLRB v. Winter-Garden Citrus Products Cooperative, 5 Cir. 1958, 260 F.2d 913, 916. In order to show disparate enforcement, General Counsel had to prove that prior approval for nonunion outside activities was regularly waived by Company officials. Although there is remote evidence of this waiver of prior approval in the record, we cannot say that General Counsel introduced sufficient evidence to substantiate a reasonable inference of prior approval. Indeed, the Trial Examiner found that "it is not clear from his testimony that the Company gives permission for such activities to be conducted on its time." It is also not clear to us that prior approval is not given. What is clear is

that General Counsel did not come forward with enough evidence to substantiate a finding of waiver of prior approval. Cf. Schwob Manufacturing Co. v. NLRB, 5 Cir. 1962, 297 F.2d 864, 867–868. Since we find for the Company on the issue of disparate enforcement, we do not reach the request of the Company to reopen the proceedings, except to suggest that this unusual administrative procedure should be approached with great caution. Enforcement of paragraphs 1(a), 1(c) and 2(a) of the Board's order is denied. Paragraph 1 (b) of the Board's order is enforced.

Paragraph 2(b) of the Board's order and the Appendix should be modified accordingly.

Enforcement granted in part and denied in part.