NATIONAL LABOR RELATIONS BOARD, Petitioner,

v.

GENERAL THERMODYNAMICS, INC., Respondent.

No. 81–1364.

United States Court of Appeals, Seventh Circuit.

Argued Dec. 15, 1981.

Decided Feb. 9, 1982.

Mary Pat Koesterer, N. L. R. B., Washington, D. C., for petitioner.

David Marshall, Quales & Brady, Milwaukee, Wis., for respondent.

Before SWYGERT, Senior Circuit Judge, and BAUER and CUDAHY, Circuit Judges.

SWYGERT, Senior Circuit Judge.

This case is a petition by the National Labor Relations Board (hereinafter the Board) for enforcement of its October 31, 1980 order requiring the employer not to display rules against solicitation and distribution and to post the customary notices informing the employees of the invalidity of the rules. Our jurisdiction is based on Section 10(e) of the National Labor Relations Act[1] (the Act), the alleged unfair labor practice having occurred at respondent's plant in Oak Creek, Wisconsin. The salient facts of the petition are as follows.

Upon being hired, employees receive an Employee's Manual which states that the "list of reasons for discipline is not intended to be all inclusive" and that "shop rules are posted from time to time by the company to govern conduct while at work." Ten months after defeat of the United Steelworkers of America's attempt to unionize the plant employees, respondent posted on bulletin boards in the plant and in the lunchroom, regulations prohibiting, *inter alia*:

9. Soliciting for any non-work-related purposes on company time, without per-

mission of management; the unauthorized collection, solicitation or canvassing of employees on company premises, at any time.

10. Distribution of unauthorized literature, written or printed matter, on company premises, or posting, defacing or removing notices, signs or writing, in any form, on bulletin boards or other company property without specific approval of management.

Respondent also simultaneously posted a memorandum from its vice-president that stated that a new disciplinary policy would be implemented on November 1, 1978.

An agent of the Board became aware of the no-solicitation and no-distribution rules while investigating a charge that respondent had illegally discharged an employee. The Board's agent communicated with respondent's attorney questioning the legality of the no-solicitation and no-distribution rules. Based on its attorney's advice, respondent removed the posted material from the bulletin boards, but made no direct effort to inform its employees that the rules had been rescinded.

The General Counsel then filed a complaint against respondent, accusing it, *inter alia*, of engaging in unfair labor practices in violation of Section 8(a)(1) of the Act by posting the no-solicitation and no-distribution rule. The Administrative Law Judge (ALJ) held in favor of the Company and ruled that because "[t]he personnel director for (respondent) testified at the hearing without contradiction that those rules were removed prior to their effective date, that they were never distributed and were never enforced . . . it is my conclusion that these rules were never implemented, they were removed prior to November 1, 1978, because the Company attorney advised the Company that the rules might be unlawful. Accordingly, it is my conclusion that it is unnecessary to decide whether these no-solicitation and/or no-distribution rules were invalid under the Act. Therefore, it is my recommendation that these allegations of the complaint be dismissed in their entirety."

On exceptions filed by the General Counsel the Board overturned the ALJ's decision

1. 29 U.S.C. § 160(e).

and held that "the posting in itself was sufficient promulgation to constitute a violation. Even if respondent decided privately not to implement these rules and removed them before their effective date of November 1, there is no evidence that respondent made any effort to inform employees of this rescission. . . . Accordingly, we conclude that by posting these rules respondent violated section 8(a)(1)." The Board ordered respondent to cease-and desist from posting or enforcing the rules and ordered the respondent to post the customary notices. Respondent notified the General Counsel and the Board that it considered the order unlawful, and that it would not comply with it. This enforcement proceeding followed.

■ The facial illegality of the no-solicitation and no-distribution rule is not seriously disputed by respondent. It is clear that "[n]o restriction may be placed on the employee's rights to discuss self-organization among themselves, unless the employer can demonstrate that a restriction is necessary to maintain production or discipline." *N.L.R.B. v. Babcock & Wilson Co.*, 351 U.S. 105, 113, 76 S.Ct. 679, 684, 100 L.Ed.2d 975 (1956). Because the rule applied to employees' solicitation during non-working as well as to working time, and because it prohibited employees, on non-working time, from distributing, without authorization, material in non-working areas of the respondent's premises the rule on its face violates Section 8(a)(1) of the Act. *Republic Aviation Co. v. N.L.R.B.*, 324 U.S. 793, 65 S.Ct. 982, 89 L.Ed. 1372, *reh. denied, N.L.R.B. v. LeTourneau Co.*, 325 U.S. 894, 65 S.Ct. 1401, 89 L.Ed. 2005 (1945).

■ We have held that if an employer were to maintain an overbroad no-solicitation rule it would violate Section 8(a)(1) of the Act even if there was no evidence that the rule was enforced. *Utrad Corp. v. N.L.R.B.*, 454 F.2d 520, 523 (7th Cir. 1971). The rationale for our holding in *Utrad* was that "the mere existence of a broad no-solicitation rule may chill the exercise of the employees' § 7 rights." *Id.* at 523, 524 (citation omitted). The *Utrad* rationale is dispositive of this case.

Respondent argues that if we were to enforce the Board's order we would be holding that the posting of an overbroad no-solicitation and no-distribution regulation is a *per se* violation of Section 8(a)(1) of the Act despite the fact that the rule was removed prior to its effective date. We disagree. "Whether respondent infringed upon its employees' freedom to engage in union or concerted activity guaranteed by Section 7 of the Act depends upon the reasonably foreseeable effects of its conduct upon its employees." *N.L.R.B. v. Walton Manuf. Co.*, 289 F.2d 177, 180 (5th Cir. 1961). Respondent's promulgated no-solicitation and no-distribution rules, "might well have deterred" their employees or they might have "reasonably assume[d] that [they] acted at [their] peril. At least that inference was open to the Board." *Id.* at 180–181.

Respondent's emphasis of the fact that the promulgated rules were withdrawn before they were to technically become effective illustrates reliance on a non-meaningful distinction. "No proof of coercive intent or effect is necessary under Section 8(a)(1) of the Act, the test being 'whether the employer engaged in conduct which, it may reasonably be said, tends to interfere with the free exercise of employee rights under the Act.' *N.L.R.B. v. Illinois Tool Works*, 7 Cir. 1946, 153 F.2d 811, 814." *Time-O-Matic, Inc. v. N.L.R.B.*, 264 F.2d 96, 99 (7th Cir. 1959). Even though the promulgated overbroad rules had not taken effect in a technical sense, the fact is that these rules were posted in areas where respondent customarily posted new regulations, there is strong indication that the employees may well have thought that the rules were effective when posted, and most importantly, respondent made no effort to inform its employees that the rules had been rescinded. *See N.L.R.B. v. Miller*, 341 F.2d 870, 874 (2d Cir. 1965). We have repeatedly emphasized the importance of effectively communicating to the employees changes in policy, otherwise the overbroad policy would have a chilling effect on employees' rights under the Act. *Utrad*, 454 F.2d at 524; *Mallory & Co. v. N.L.R.B.*, 389

F.2d 704, 710 (7th Cir. 1967); *Time-O-Matic, Inc. v. N.L.R.B.*, 264 F.2d at 101.

 Further, the fact that respondent is presently in compliance with the Act does not disentitle the Board to a decree barring resumption of the illegal conduct. *G & W Electric Specialty Co. v. N.L.R.B.*, 360 F.2d 873, 874 (7th Cir. 1966). Section 10(c) of the Act [2] "charges the Board with the task of devising remedies to effectuate the policies of the Act." *N.L.R.B. v. Seven-Up Bottling Co.*, 344 U.S. 344, 346, 73 S.Ct. 287, 288, 97 L.Ed. 377 (1953). The Board's power is a broad discretionary one and a Board order will not be disturbed "unless it can be shown that the order is a patent attempt to achieve ends other than those which can fairly be said to effectuate the policies of the Act." *Fibreboard Paper Products Corp. v. N.L.R.B.*, 379 U.S. 203, 216, 85 S.Ct. 398, 405, 13 L.Ed.2d 233 (1964) (citation omitted). Such a showing has not been made by respondent in this case. *N.L.R.B. v. Stafford Trucking, Inc.*, 371 F.2d 244, 249 (7th Cir. 1966). The Board could reasonably conclude that requiring respondent to post a notice regarding the change in its solicitation and distribution rule will carry more impact in informing employees of their rights and effectuating the policies of the Act than the respondent's muted removal of the rules from the bulletin boards. *Republic Aviation Corp.*, 324 U.S. at 800, 65 S.Ct. at 986; *N.L.R.B. v. Southern Household Products Co.*, 449 F.2d 749, 750 (5th Cir. 1971). "The Company should not object to this opportunity to make its position clear." *Utrad*, 454 F.2d at 524.

In sum, there is no meaningful distinction between a respondent's revocation of an overbroad no-solicitation and no-distribution rule and a respondent's withdrawal of a promulgated overbroad rule where in both cases there is no effective communication of the change of policy to the employees which would guard against the chilling effect resulting from the overbroad rule. A contrary holding would mean that respondent's muted removal of the illegal rules could preclude the Board from ordering remedial orders to be posted, even though the section 7 rights of employees had been chilled. If nothing could prevent an employer from promulgating an overbroad no-solicitation and no-distribution rule and withdrawing it before it had technically taken effect, the employees would be left to acting at their peril because they would not be certain that the rules had no application. We fail to see what purpose would be served in refusing to enforce the Board's order and we do not welcome the possible implication of holding that respondent's actions are sufficient to bring it into compliance with the Act.

For the foregoing reasons, the Board's order is enforced in full.

---

2. Section 10(c) provides that the Board, upon a finding that an unfair labor practice has been committed "shall issue ... an order requiring such person to cease and desist from such unfair labor practice, and to take such affirmative action including reinstatement of employees with or without back pay, as will effectuate the policies of this Act...."