**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**METHODIST HOSPITAL OF GARY, INC., Respondent.**

No. 82–2628.

United States Court of Appeals, Seventh Circuit.

Argued May 31, 1983.

Decided April 25, 1984.

Catherine Garcia, N.L.R.B., Washington, D.C., for petitioner.

Jeffrey S. Heller, Seyfarth, Shaw, Fairweather & Geraldson, Chicago, Ill., for respondent.

Before CUMMINGS, Chief Judge, FAIRCHILD, Senior Circuit Judge, and POSNER, Circuit Judge.

FAIRCHILD, Senior Circuit Judge.

Petitioner Board seeks enforcement of its order reported at 263 N.L.R.B. 411 (1982). Factual details can be found in the decision of the Administrative Law Judge (ALJ). We shall avoid unnecessary repetition.

Respondent Hospital refused a request by the Union to permit Hospital employees to hold an election during meal hours March 5, 1981 in the cafeterias at the Hospital's two locations. The purpose was to elect employee members of the bargaining committee for the Union, the certified bargaining representative. All employees in the bargaining unit, including non-members of the Union, were eligible to vote.

A year earlier an election had been held in the cafeterias to elect a nine member Grievance Committee. All hourly employees outside the bargaining unit were eligible to vote at that election. The Hospital had urged employees to vote. There were 625 employees in the bargaining unit at the two locations and about 1,300 in the group eligible to vote for the Grievance Committee.

The ALJ and Board found that the only reason given at the time permission was denied in 1981 was that permitting such an election was "contrary to Hospital policy" and "because we do not want the employees to favor, to think we favor the Union." The refusal was found to be discriminatory and deemed a Section 8(a)(1) unfair labor practice.

The Board's order was carefully drawn. In substance it required the Hospital to desist from discriminatory refusal of permission for elections of this type. Appropriate notices were to be posted.

I

The critical finding is that of discriminatory motivation. We conclude that the finding is supported by substantial evidence viewed in the light of the whole record.

The Hospital's refusal of permission was not accompanied by any adequate non-discriminatory reason. Although the contention was made at the hearing that the holding of the election would have disrupted the operation of the cafeterias, management had not even hinted at such a reason. One year earlier the Hospital had permitted and encouraged the holding in the cafeterias of an election of a Grievance Committee to represent the employees not represented by the Union. The number eligible

to vote in 1980 was twice as large as the number eligible to vote in 1981, although it is true that the voting went on over two days instead of one.

At the hearing, the Hospital introduced diagrams and pictures of the cafeterias and the dimensions and usage figures reflected in the ALJ's decision. The ALJ and Board were not persuaded that substantial disruption would have resulted, or that the refusal was motivated by concern over that possibility. We have reviewed the testimony and exhibits and conclude that the evidence does not compel either finding. Obviously, having the bargaining unit employees stop at a card table, staffed by one employee, to mark and deposit ballots would have had some effect on traffic within each cafeteria, but the claim of "chaos and disruption" could reasonably be rejected. That any effect would be of such proportions as to be unacceptable is belied by the evidence referred to by the ALJ of drawings, bake sales, and credit union drives held from time to time in the cafeteria. We reject the Hospital's contention that disruption would have occurred, or that concern over the disruptive effect was the reason for the refusal, though undisclosed.

The record makes it clear that the proposed election would not have had any effect on patient care. The cafeterias are separate from patient care areas. No patients eat in one of the cafeterias. A small number of patients, no more than ten at any one time, eat in the other one. Patients are required to obtain a physician's order before doing so. There was no testimony suggesting that the holding of the election would cause any adverse effect on these patients. Distribution of Union literature has been regularly permitted in the cafeterias. *See NLRB v. Baptist Hospital, Inc.,* 442 U.S. 773, 786, 99 S.Ct. 2598, 2605, 61 L.Ed.2d 251 (1979); *Beth Israel Hospital v. NLRB,* 437 U.S. 483, 507, 98 S.Ct. 2463, 2476, 57 L.Ed.2d 370 (1978).

## II

■ Section 8(a)(1) of the National Labor Relations Act, 29 U.S.C. § 158(a)(1), provides:

(a) It shall be an unfair labor practice for an employer—

(1) to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in [Section 7].

Section 7 of the Act, 29 U.S.C. § 157, provides:

Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection, and shall also have the right to refrain from any or all such activities except to the extent that such right may be affected by an agreement requiring membership in a labor organization as a condition of employment as authorized in [Section 8(a)(3)].

The Hospital's initial argument is that in voting for employee members of a bargaining committee, the employees are not exercising Section 7 rights. It says the election is an internal Union affair, only tangentially related to Section 7 rights. Therefore, says the Hospital, its refusal to permit the election on its property cannot be an interference with employees in the exercise of Section 7 rights. The Hospital does not mention a fact which could be of importance here, that the Union members are not only selecting their committee, but they are seeking the votes of non-Union employees as well.

In any event, however, we are unable to adopt the Hospital's view. Assuming validity of the Hospital's analysis that in this case self-organization has been completed and the labor organization had been formed, there still remained protected by Section 7 the employees' right to "assist" the labor organization, "to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining." It may well be fallacious even to attempt so refined an analysis of the specific terms used to describe the concept of

protected rights, but whether we parse the enumerated rights separately or not, we have no doubt that the employees' election of bargaining committee members to negotiate on their behalf is an exercise of Section 7 rights, protected from employer interference.

◼ A second argument appears to be that the Board failed in a duty to balance the employee rights, if protected, against the Hospital's property and managerial rights. A principle of accommodation is to be applied where the exercise of protected rights collide with the employer's property rights or right to maintain discipline. *Republic Aviation Corp. v. Board*, 324 U.S. 793, 797–98, 65 S.Ct. 982, 985–86, 89 L.Ed. 1372 (1945); *Labor Board v. Babcock & Wilcox Co.*, 351 U.S. 105, 112, 76 S.Ct. 679, 684, 100 L.Ed. 975 (1956) (quoted in *Beth Israel Hospital v. NLRB*, 437 U.S. 483, 492, 98 S.Ct. 2463, 2469, 57 L.Ed.2d 370 (1978)). If more careful consideration of the principle of accommodation might be required in the absence of discriminatory motivation, the Board made it plain that its decision was based on such motivation. "Additionally, we find it unnecessary to pass on whether Respondent's conduct would have violated the Act in the absence of discrimination." 263 N.L.R.B. at 411 n. 3.

◼ Discriminatory denial of the use of an employer's property has been recognized as an interference with the exercise of Section 7 rights. *Labor Board v. Stowe Spinning Co.*, 336 U.S. 226, 229, 69 S.Ct. 541, 542, 93 L.Ed. 638 (1949). Discriminatory motivation for denial of use of the employer's property for the exercise of Section 7 rights makes such denial a Section 8(a)(1) unfair labor practice, even where the same decision without discriminatory motivation might be deemed justified. *Montgomery Ward & Co., Inc. v. N.L.R.B.*, 692 F.2d 1115, 1121 (7th Cir.1982); *Midwest Stock Exchange, Inc. v. N.L.R.B.*, 635 F.2d 1255, 1270 (7th Cir.1980); *N.L.R.B. v. Northeastern University*, 601 F.2d 1208, 1216–17 (1st Cir.1979). Therefore it is un-necessary to apply the balancing process when discriminatory denial has been found.

### III

◼ Some months after the hearing, the Hospital filed a motion to reopen the record, presenting affidavits covering proposed evidence. As summarized in the Hospital's brief, the additional evidence would indicate that plans to enlarge the cafeterias had not been carried out, cafeteria usage had increased substantially due to increases in the workforce, and the Grievance Committee for non-bargaining unit employees had been disbanded.

The Board denied the motion, and the Hospital claims the denial was an abuse of discretion.

We conclude there was no abuse of discretion.

The evidence of these developments after the hearing on the unfair labor practice charge would have no bearing on the finding of discriminatory motivation at the time the permission was denied.

To the extent that the proffered evidence would tend to show that a refusal of permission in the future would not be discriminatory, but justified by property rights or managerial concerns, the evidence can be offered by the Hospital in defense if noncompliance is claimed by the Board.

The order had been carefully tailored to conform to the Board's reliance on discriminatory motivation as the critical fact.

Paragraph 1(a) of the order required the Hospital to cease and desist from

Refusing to give its employees permission to use its cafeterias during mealtimes to conduct an election for employee members of the bargaining committee which is to represent 1199 Indiana, a Division of National Union of Hospital and Health Care Employees, RWDSU, AFL–CIO, in negotiations with Respondent, where such permission to conduct elections is granted to nonbargaining unit employees in connection with grievance-committee elections or intraunion elections for any other labor organiza-

48

tion, or where refusal of such permission to 1199 Indiana is motivated by any element of antiunion animus; but nothing in this order shall require Respondent to give such permission to 1199 Indiana if and when (1) 1199 Indiana is no longer the bargaining representative for the employees; (2) the right to use the cafeterias is modified by the parties as a result of collective bargaining between 1199 Indiana and Respondent; or (3) such use is denied by Respondent for any legitimate nonpretextual reason which does not involve any element of union animus or discrimination between labor organizations.

263 N.L.R.B. at 418.

## IV

The Hospital argues that we should dismiss the Board's petition for enforcement as moot because the Hospital has not only disbanded the non-bargaining unit grievance committee which had received preferential access to the cafeterias, but has adopted a policy statement which uniformly prohibits elections in the cafeterias during meal periods, break periods, or shift change periods.

We conclude that the adoption of a policy which could conceivably be changed or perhaps unevenly enforced does not render this proceeding moot.

The order required posting of notices stating the substance of the order and the Hospital's intention to comply. Posting has not occurred.

 Notwithstanding an assertion of mootness, the Board is ordinarily entitled to have a decree forbidding resumption of the unfair practice. *N.L.R.B. v. Marland One-Way Clutch Co., Inc.*, 520 F.2d 856, 861 (7th Cir.1975). It is reasonable to conclude that requiring an employer to post a notice will carry significant impact in informing employees of their rights and effectuating the policies of the Act. *N.L.*

---

*R.B. v. General Thermodynamics, Inc.*, 670 F.2d 719, 722 (7th Cir.1982).

The order will be ENFORCED.