NATIONAL LABOR RELATIONS
BOARD, Petitioner,

v.

ALWIN MANUFACTURING COMPANY,
INC., Respondent.

No. 95–1921.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 29, 1995.

Decided March 4, 1996.

Aileen A. Armstrong, Margaret Gaines Neigus, Daniel J. Michalski (argued), National Labor Relations Board, Appellate Court, Enforcement Litigation, Washington, DC, Joseph A. Szabo, Director, National Labor Relations Board, Milwaukee, WI, for petitioner.

Ronald T. Pfeifer, Godfrey & Kahn, Green Bay, WI, Donald F. Woodcock (argued), Jill Boland, Calfee, Halter & Griswold, Cleveland, OH, for respondent.

Before POSNER, Chief Judge, and KANNE and DIANE P. WOOD, Circuit Judges.

DIANE P. WOOD, Circuit Judge.

Few topics are more central to the relationship between an employer and its union-represented employees than vacation policy and performance expectations. Thus, it should not have been surprising to the Alwin Manufacturing Company (Alwin, or the Company) when the United Steelworkers (the Union) complained that its unilateral changes in vacation provisions and minimum production requirements, imposed while a collective bargaining agreement was in force, violated §§ 8(a)(1) and (5) of the National Labor Relations Act (NLRA). An administrative law judge of the National Labor Relations Board (NLRB) found in favor of the Union; the NLRB affirmed his decision. When the Company continued to resist implementation of the remedies ordered by the Board, the Board petitioned this Court for enforcement of its Order. Finding no merit in the Company's arguments against the Board's petition, we order the Board's decision enforced.

### I.

The background of this case is relatively straightforward. Alwin is a manufacturer and seller of paper towel dispensers and related products. The Union represents the production and maintenance employees at Alwin's plant in Green Bay, Wisconsin. Since

the early 1960s, labor relations at the plant have been governed by a collective bargaining agreement. The agreement at issue in this case covered the period from March 1, 1991, through February 28, 1994.

In June of 1992, Glen Thiede, the Company's Director of Manufacturing, informed members of the Union's grievance committee that Alwin wished to modify the vacation scheduling provisions of the existing collective bargaining agreement. John Tilly, a member of the Union's grievance committee, responded with a written proposal setting forth possible modifications. A few days later, the Company came back with a memorandum detailing a plan under which the number of employees who could take vacation on any given day would be limited, and the scheduling of vacations would be done on a "first come, first served" basis rather than by seniority. After reviewing that proposal, the Union committee informed Alwin that it was unacceptable.

The very next day, on June 26, 1992, Alwin presented the Union with a revised plan that was identical to the rejected one except for the inclusion of an additional clause providing that vacation requests received more than three weeks in advance would be granted on a "first come, first served" basis only where a financial commitment had been made. Again, the Union committee informed the Company that they could not accept the proposal, and that in any event, all changes had to be approved by the union membership. Immediately after the June 26 meeting, Alwin unilaterally implemented its last offer.

Three months later, on September 21, 1992, Alwin acted again. At a meeting with the grievance committee that day, Thiede informed the Union that the Company was instituting minimum production standards for some bargaining unit jobs, which would take effect the very next day. Employees who did not meet these new requirements would be subject to discipline. Thiede followed up by informing the employees themselves of the new requirements on September 22. Shortly thereafter, the Company in fact began to subject employees to discipline for failing to meet the minimum production standards.

## II.

The Union filed its unfair labor practice charge with the NLRB on October 8, 1992, alleging that Alwin violated §§ 8(a)(1) and (5) of the NLRA by unilaterally implementing first the new vacation scheduling procedure and then the new minimum production standards. After a trial in early 1993, Administrative Law Judge Richard J. Skully issued his opinion on April 27, 1994. As noted above, he found that Alwin had violated the NLRA by taking each of the actions at issue without prior notice to, and bargaining with, the Union. He ordered the Company to cease and desist from making unilateral midterm changes in the collective bargaining agreement; to rescind the minimum production standards and the changes in vacation policy; to expunge all evidence of discipline from employee records related to any failure to meet the minimum production standards; to make those employees whole; and, upon request, to bargain with the Union. By order dated July 28, 1994, the NLRB affirmed Judge Skully's rulings, findings, and conclusions, and adopted his recommended Order.

## III.

Before this Court, Alwin raises two principal arguments in opposition to the Board's petition for enforcement. First, it asserts an enforcement order would be a pointless act, because the issue of the Company's compliance with the July 28, 1994 Order is currently before another administrative law judge in the subsequently filed Case No. 30–CA–21556. Since the NLRB itself does not know whether the Company complied, Alwin argues, this action is premature. In addition, or in the alternative, Alwin asserts that the Board is not entitled to enforcement because there is no reasonable expectation that the wrong will be repeated. The latter argument, although developed in the brief under the "prematurity/mootness" point, relates as well to Alwin's second principal argument: enforcement would be inequitable under the circumstances here. Alwin claims that it has been subjected to "vexatious and multiplicative" litigation before the Board, and that the Board has filed this petition in a "disingenu-

ous attempt to pressure the Company" in the second case. Finally, Alwin argues that the Board should not be allowed to obtain enforcement of an order where it has impeded the Company's compliance by failing to furnish necessary information to the Company.

 This Court has jurisdiction to consider the NLRB's petition under NLRA § 10(e), 29 U.S.C. § 160(e). Under that statute, we must uphold the Board's determination if its factual findings are supported by substantial evidence on the record as a whole and its legal conclusions have a reasonable basis in law. See *NLRB v. Augusta Bakery,* 957 F.2d 1467 (7th Cir.1992). We look for "such relevant evidence as a reasonable mind might accept as adequate to support" the Board's determination, *id.* at 1471, and we uphold the Board's legal conclusions "unless they are irrational or inconsistent with the [NLRA]." *Augusta Bakery,* 957 F.2d at 1471 (quoting *Aqua–Chem, Inc. v. NLRB,* 910 F.2d 1487, 1490 (7th Cir.1990), *cert. denied,* 501 U.S. 1238, 111 S.Ct. 2871, 115 L.Ed.2d 1037 (1991)).

 Neither in its exceptions before the NLRB nor in its brief in this Court did Alwin challenge the administrative law judge's finding that Alwin violated §§ 8(a)(1) and (5) of the NLRA by making unilateral midterm changes to the vacation scheduling policy. The Board accordingly argues that Alwin is jurisdictionally barred from obtaining appellate review of this finding. See NLRA § 10(e), 29 U.S.C. § 160(e), and 29 C.F.R. §§ 102.46(b) and (h). We agree. Alwin has shown no reason why it should be relieved from that rule, and we see none in the record. Accordingly, the Board's Order with respect to this finding stands unchallenged. See, e.g., *Woelke & Romero Framing, Inc. v. NLRB,* 456 U.S. 645, 665–66, 102 S.Ct. 2071, 2082–83, 72 L.Ed.2d 398 (1982); *Augusta Bakery,* supra, 957 F.2d at 1478. Further, in its brief to this Court, Alwin does not challenge the Board's finding that it violated §§ 8(a)(1) and (5) of the Act by unilaterally instituting minimum production standards and taking disciplinary action against employees who failed to meet them. Thus, it has waived that argument for purposes of this appeal. See Circuit Rule 28(f); *NLRB*

*v. P\*I\*E Nationwide, Inc.,* 923 F.2d 506, 516 n. 13 (7th Cir.1991). In this posture, summary enforcement of the Order is appropriate. *Rock–Tenn Company v. NLRB,* 69 F.3d 803, 807–808 (7th Cir.1995); *United States Marine Corp. v. NLRB,* 944 F.2d 1305, 1314 (7th Cir.1991) (en banc), *cert. denied,* 503 U.S. 936, 112 S.Ct. 1474, 117 L.Ed.2d 618 (1992); *NLRB v. Jakel Motors, Inc.,* 875 F.2d 644, 645 (7th Cir.1989). Even if these procedural flaws were not present, the Board's Order on this record is amply supported by the evidence. See *NLRB v. Katz,* 369 U.S. 736, 741–748, 82 S.Ct. 1107, 1110–1114, 8 L.Ed.2d 230 (1962); *G. Heileman Brewing Co., Inc. v. NLRB,* 879 F.2d 1526, 1530 (7th Cir.1989).

Alwin's inability to challenge either of the Board's key findings undoubtedly explains its more general attacks against enforcement, which are based on mootness and equitable considerations. Neither of these arguments carries the day either, however, for they are both based on false premises. There is nothing either premature or moot about the Board's petition, and there is nothing in the general equities of the case that renders the Board's Order unenforceable pursuant to § 10(e).

 The Board's Order with respect to the 1992 violations charged in case number 30–CA–11899 is a final and appealable order. The fact that the Board has before it another unfair labor practice complaint relating to the same company and plant (case number 30–CA–12556), which may involve some of the same facts as the case before us, is simply irrelevant to the reviewability of this Order. See *NLRB v. P\*I\*E Nationwide, Inc.,* 894 F.2d 887, 892–894 (7th Cir.1990). The later case involves charges that Alwin engaged in bad-faith bargaining with the Union over the minimum production standards and thereby precipitated an unfair labor practice strike. Alwin's theoretical ability to enter into a private settlement agreement with the Union that covers both cases does not render this proceeding premature either. The Board has no statutory obligation to defer to private settlement agreements. See *NLRB v. International Brotherhood of Elec-*

*trical Workers,* 992 F.2d 990, 992 (7th Cir. 1993).

Alwin is also mistaken in believing that events in the second case, or its own alleged compliance with the first Order, have mooted or may moot this proceeding. Events in the second case cannot have that effect, since the second case concerns different conduct and different legal obligations. Unless two proceedings present the same "case or controversy," the fact that one is resolved says nothing about whether the other is resolved. With respect to Alwin's claim of compliance, we note first that Alwin itself does not assert that it has *fully* complied with the Board's Order. This alone makes it clear that the Board has presented an active controversy to the court. But there is an even more important reason to reject Alwin's claim. It rests on the erroneous assumption that a showing of full compliance with the Order would render the enforcement proceeding moot. The Supreme Court and this Court have repeatedly made it clear that compliance does not moot an enforcement proceeding, because the Board's Orders impose a continuing obligation, and compliance today may evaporate tomorrow. See, e.g., *NLRB v. Mexia Textile Mills, Inc.,* 339 U.S. 563, 567–69, 70 S.Ct. 826, 828, 94 L.Ed. 1067 (1950); *NLRB v. Raytheon Co.,* 398 U.S. 25, 27–28, 90 S.Ct. 1547, 1548–49, 26 L.Ed.2d 21 (1970); *P\*I\*E Nationwide,* 894 F.2d at 890; *NLRB v. Ohmite Manufacturing Co.,* 557 F.2d 577, 579 n. 5 (7th Cir.1977). Given Alwin's overall record in this case, this is clearly not a case where there is "no reasonable expectation that the wrong will be repeated," see *Raytheon,* supra, 398 U.S. at 27, 90 S.Ct. at 1548; *NLRB v. Methodist Hospital of Gary, Inc.,* 733 F.2d 43, 48 (7th Cir. 1984). The Board was fully justified in seeking enforcement of its Order.

Alwin's arguments on the equities fail for many of the same reasons its arguments about prematurity and mootness suffer that fate. The Board has not brought redundant proceedings against Alwin; the issues and factual posture of the second case differ in important respects from the one before us; and there is no evidence at all to support Alwin's conclusory allegation that the Board is somehow impermissibly trying to pressure it. The Board certainly is trying to compel Alwin to comply with the NLRA, but that is its job. As for the Board's alleged interference with Alwin's efforts to comply with the 1994 Order, through its failure to furnish Alwin with information about the affected employees' interim earnings, Alwin assumes a duty on the part of the Board that does not exist. It may be that the Board is not being as helpful to Alwin as it might. But Alwin was the wrongdoer when it violated the Act by instituting the unilateral changes in minimum performance standards. It is therefore Alwin's burden to collect the information about the aggrieved employees' interim earnings that is necessary for compliance with the Order. Since Alwin itself has not yet shown that it has complied with the reinstatement part of the Order, the Board would not have all the information it needed from Alwin even if it was inclined to be more cooperative. Once the Board's Order is enforced, we trust that both Alwin and the Board will be able to move promptly to make these employees whole.

## IV.

Both at oral argument and in its brief, Alwin pronounced this case unique, with unprecedented facts. Alas, that is not true. It is nothing more or less than a case in which the Board reviews allegations of unfair labor practices, finds them supported, issues an Order, and, due to the employer's obstreperous attitude, finds it necessary to come to the court for formal enforcement of that Order. Because Alwin has presented nothing but frivolous objections to enforcement, and in any event it has waived the right to attack the Board's findings of violations, the Board's Order is ENFORCED.