**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

**and**

**International Union of Operating Engineers, Local No. 139, AFL–CIO, Intervenor,**

**v.**

**HOWARD IMMEL, INC., Respondent.**

No. 96–1812.

United States Court of Appeals, Seventh Circuit.

Argued Oct. 22, 1996.

Decided Dec. 19, 1996.

Aileen A. Armstrong, John Burgoyne (argued), National Labor Relations Board, Appellate Court, Enforcement Litigation, Washington, DC, Joseph A. Szabo, Director, National Labor Relations Board, Region 30, Milwaukee, WI, for Petitioner.

Paul D. Lawent (argued), Association of General Contractors of Wisconsin, Madison, WI, for Respondent.

John J. Brennan (argued), Marianne G. Robbins, Previant, Goldberg, Uelmen, Gratz, Miller & Bruegeman, Milwaukee, WI, for Intervenor.

Before POSNER, Chief Judge, and WOOD, Jr., and CUDAHY, Circuit Judges.

HARLINGTON WOOD, Jr., Circuit Judge.

Intervenor International Union of Operating Engineers, Local No. 139 ("Operating Engineers") charged Respondent Howard Immel, Inc. ("Immel") with committing several unfair labor practices stemming from Immel's sale of its only operable crane and its decision to terminate its relationship with the Operating Engineers. An administrative law judge ("ALJ") of the National Labor Relations Board ("Board" or "NLRB") found in favor of the Operating Engineers, and the

Board entered an order incorporating those findings and adopting the ALJ's recommendations with minor modifications.

After attempting to negotiate compliance with Immel for 8½ months, the NLRB filed the instant petition seeking enforcement of its order. Unsurprisingly, Immel, which filed only one exception before the Board, takes issue with several aspects of the order and findings before this court. However, because Immel failed to file exceptions before the Board and because Immel fails to raise any meritorious objections here, we grant enforcement.

## I.

This dispute centers around Immel's decision to sell its only operable crane and the effect that decision had on its collective-bargaining agreement with the Operating Engineers. Immel, a general contractor located in Green Bay, Wisconsin, has had a series of collective-bargaining agreements with the Operating Engineers, each providing that Operating Engineers members would operate Immel's crane, skid steer loaders ("Bobcats") and forklifts. At the same time, Immel also has been a party to a series of collective-bargaining agreements with the Laborers' International Union of North America, Local No. 539 ("Laborers"). Similar to the agreements with the Operating Engineers, these agreements provide that Laborers members will operate Immel's Bobcats and forklifts. For the most part, Immel has employed only two members of the Operating Engineers, one of whom is also a member of the Laborers and was seasonally laid off at the time that the alleged unfair labor practices took place. These two employees were the only employees who operated the crane, while both the Operating Engineers members and the Laborers members operated the Bobcats and forklifts.

On March 18, 1993, Immel notified the Operating Engineers that it would terminate the parties' relationship upon expiration of the effective collective-bargaining agreement on May 31, 1993. Subsequently, Immel notified the Laborers that it would assign operation of its Bobcats and forklifts to Laborers members. Less than a month later, Immel sold its only operable crane without notifying the Operating Engineers. Beginning in May, Immel refused to recognize the Operating Engineers as a bargaining unit contending that because it had sold the crane, it no longer performed work covered by the Operating Engineers' agreement. However, after selling the crane, Immel leased cranes and employed leased operators. Moreover, after selling the crane, Immel effectively transferred the two Operating Engineers members who had operated the crane to the Laborers' contract.

The Operating Engineers filed unfair labor practices charges based on these actions, and the Regional Director issued a complaint against Immel. After a trial, the ALJ found that Immel had violated the National Labor Relations Act ("NLRA") and recommended that the Board order Immel to cease and desist, to bargain with the Operating Engineers, to compensate the two effected employees for any monetary loss and to post a notice. Immel filed one exception to the ALJ's recommendations and a response to the General Counsel's exceptions. In its response, Immel also stated:

> Although [Immel] does not agree with the findings of the Administrative Law Judge, [Immel] did not file previously exceptions to the Judge's order but reserves the right to appeal any final order of the NLRB to the 7th Circuit Court of Appeals.

(Resp't Resp. and Cross–Exceptions at 2). The Board adopted the ALJ's findings and recommendations with slight modifications.

For the next 8½ months, the Operating Engineers, the Board, and Immel attempted to negotiate compliance. However, by April 1996 the parties had not come to an agreement. Thus, the Board filed the instant petition seeking to enforce its order. At the time of oral argument, the two crane operators had not received any monetary compensation or reimbursement for health insurance premiums and union dues, nor had the Operating Engineers received any contributions to the Union's fringe benefit fund.

## II.

■ We have jurisdiction to consider the Board's petition under Section 10 of the

NLRA. 29 U.S.C. § 160(e) (1996). That section also provides the appropriate standard of review. *Id.* Under the statute, we must uphold the Board's determination if substantial evidence on the record as a whole supports the Board's factual findings and if the Board's legal conclusions have a reasonable basis in the law. *NLRB v. Alwin Mfg. Co.,* 78 F.3d 1159, 1162 (7th Cir.1996); *NLRB v. Augusta Bakery Corp.,* 957 F.2d 1467, 1471 (7th Cir.1992). Therefore, in reviewing the Board's factual findings, we look for " 'such relevant evidence as a reasonable mind might accept as adequate to support' the Board's determination," and we will uphold the Board's legal conclusions "unless they are irrational or inconsistent with the National Labor Relations Act." *Augusta Bakery,* 957 F.2d at 1471 (citations omitted).

### A.

Section 10(e) of the NLRA states that:

No objection that has not been urged before the Board, its member, agent, or agency, shall be considered by the court, unless failure to urge such objection shall be excused because of extraordinary circumstances.

29 U.S.C. § 160(e) (1996). Accordingly, the United States Supreme Court and, consequently, this court have consistently held that a party which fails to raise an exception before the Board is jurisdictionally barred from raising that exception in an enforcement proceeding before the court of appeals. *E.g., Woelke & Romero Framing, Inc. v. NLRB,* 456 U.S. 645, 666, 102 S.Ct. 2071, 2083, 72 L.Ed.2d 398 (1982); *Augusta Bakery,* 957 F.2d at 1478; *see, e.g., Alwin,* 78 F.3d at 1162; *NLRB v. Dominick's Finer Foods, Inc.,* 28 F.3d 678, 685 (7th Cir.1994).

 Furthermore, a general statement purporting to preserve any or all objections will not satisfy Section 10(e)'s requirement. *See Marshall Field & Co. v. NLRB,* 318 U.S. 253, 255, 63 S.Ct. 585, 586, 87 L.Ed. 744 (1943). As we have explained previously, Section 10(e) operates to ensure that the Board has a chance to review any issues that may arise in a subsequent review of its deci-

sion. *Dominick's Finer Foods,* 28 F.3d at 685. Congress enacted Section 10(e) to provide the Board with the first opportunity to consider objections so that we would not review any Board determination without receiving the full benefit of the Board's expertise. *Id.* (citing *Prairie Tank Southern, Inc. v. NLRB,* 710 F.2d 1262, 1266 (7th Cir.1983)). Accordingly, to effectively preserve an issue, the respondent's exception must apprise the Board of the issue that the responding party intends to press on review sufficiently enough that the Board may consider the exception on the merits. *Marshall Field & Co.,* 318 U.S. at 255, 63 S.Ct. at 586.

 Immel concedes that it did not file written exceptions before the Board.[1] However, Immel contends that its general "reserv[ation of] its right to appeal any final order of the NLRB to the 7th Circuit Court of Appeals" operated to preserve the objections that Immel raises here. Contrary to Immel's arguments, this general reservation did not apprise the Board of the objections Immel raises here, nor did it afford the Board an opportunity to consider these objections on the merits before instituting these proceedings. Therefore, it is insufficient to preserve Immel's right to object to the order here. *See Marshall Field & Co.,* 318 U.S. at 255, 63 S.Ct. at 586 (general objection that the hearing officer had erred "in making each and every recommendation" was insufficient to preserve any specific issue for appellate review). Moreover, Immel has not put forth, nor does the record reflect, any extraordinary circumstances excusing its failure to file exceptions before the Board. Therefore, Immel has waived its right to challenge the findings before us. Because Immel cannot contest the Board's finding that Immel violated the NLRA, we could summarily enforce the Board's order. *See Rock–Tenn Co. v. NLRB,* 69 F.3d 803, 807–08 (7th Cir.1995) (uncontested findings that the respondent violated the Act summarily enforced); *U.S. Marine Corp. v. NLRB,* 944 F.2d 1305, 1314 (7th Cir.1991) (same); *Montgomery Ward & Co. v. NLRB,* 668 F.2d 291, 304 (7th Cir.1981) (same).

---

1. On appeal, Immel has abandoned the one exception it raised before the Board.

## B.

Even if Immel had preserved its objections, however, the Board would be entitled to enforcement. Immel has presented no meritorious objections. Rather, substantial evidence on the record as a whole supports the Board's factual findings and its conclusions of law are reasonably based.

At oral argument, Immel contended that the Board should not be entitled to summary enforcement because it failed to investigate whether Immel was complying with its order or to make a formal finding that Immel was not complying with its order. Immel acknowledges that Section 10(e) does not require the Board to make such a finding or conduct such an investigation before seeking enforcement. However, Immel maintains that because the Board has had a 60-year informal policy of not seeking enforcement until it has determined that a party is not complying with its order, the Board's actions in seeking enforcement here without such a finding are inconsistent with the policies of the NLRA.[2] Immel reasons that, pursuant to the Board's informal policy, the Board should notify a respondent before seeking compliance so that the respondent has a chance to rectify the violation before the Board seeks enforcement.

■ However, requiring the Board to conduct such an investigation or to make such findings would serve no useful purpose. As Immel concedes, compliance is not relevant to an enforcement proceeding. Rather, because the Board's orders impose a continuing obligation and because compliance today may evaporate tomorrow, compliance is not a defense to an enforcement action, nor does compliance moot enforcement proceedings. *Alwin,* 78 F.3d at 1163. Therefore, even if a respondent voluntarily complied with a Board order after a formal finding that it

was not complying, the Board could still institute proceedings to ensure future compliance.

Moreover, requiring the Board to find that the respondent had not complied with its order before instituting enforcement proceedings itself would be inconsistent with the policies underlying the NLRA. By requiring the Board to find at least one instance of noncompliance before seeking enforcement, we would be allowing the respondent one "free" violation because the Board has no independent power to sanction a party for violating its order. Rather, the Board must seek an appellate court enforcement order, a violation of which becomes punishable as contempt. Allowing the respondent one unpunishable violation conflicts with the Board's statutory obligation to compel compliance with the NLRA and prevent a party from engaging in unfair labor practices. *See* 29 U.S.C. § 160(a); *Alwin,* 78 F.3d at 1163.

In its opening brief, Immel also takes issue with several factual determinations and legal conclusions. None of these contentions are meritorious. First, Immel argues that the ALJ should have found that Immel had an 8(f) agreement with the Operating Engineers rather than a 9(a) agreement.[3] However, the ALJ's findings are supported by substantial evidence on the record. Particularly, the Memorandum of Agreement that Immel and the Operating Engineers signed states that Immel:

> recognizes the Union as the exclusive bargaining agent for all of the employees in the bargaining unit covered by this contract as provided in Section 9(a) of the National Labor Relations Act.

(General Counsel Ex. 2(a)).

Second, Immel maintains that the ALJ should have found that the Operating Engi-

---

**2.** Immel also argues that the Board's efforts in seeking enforcement here are inconsistent with the NLRA's policy of promoting amicable settlements because Immel, the Board and the Operating Engineers have been attempting to negotiate voluntary compliance. However, the Board's 8½ month effort to effectuate voluntary compliance is hardly inconsistent with an effort to reach an amicable settlement. Moreover, we have recognized that seeking enforcement while the parties

attempt to negotiate a private settlement is not inconsistent with the policies underlying the NLRA. *See Alwin,* 78 F.3d at 1162–63 ("The Board has no statutory obligation to defer to private settlement agreements.").

**3.** Under an 8(f) agreement, Immel would have been entitled to withdraw its recognition of the Operating Engineers as soon as the agreement expired.

neers represented a one-man unit at Immel, and, that, therefore, Immel had no obligation to negotiate with the union. However, the ALJ determined that the Operating Engineers represented a two-man unit because the seasonally laid off Operating Engineers member had a reasonable expectation of recall. As such, the ALJ concluded that he was still a member of the bargaining unit. Substantial evidence also supports this finding. For example, the record shows that the worker had been laid off many times over the past 20 years always with the expectation of being recalled and that the worker was always recalled. Additionally, Immel's own representative testified that Immel intended to recall the worker from the 1993 layoff.

Finally, Immel contends that the ALJ improperly concluded that the Operating Engineers' status as a 9(a) representative obligated Immel to bargain with the union over a successor agreement. Immel reasons that although a 9(a) representative enjoys a presumption of continued majority status and, thus, a right to bargain for a successor agreement unless that presumption is rebutted, Immel was entitled to repudiate its agreement with one of the 9(a) representatives because it had overlapping 9(a) agreements with two unions. However, no legal authority supports the proposition that an employer's actions in entering into two conflicting bargaining agreements alter the rights of a party to a 9(a) agreement. Indeed, the only authority that Immel cites recognizes that by entering into conflicting bargaining agreements an employer may have to pay two unions for work that only one performed. *Hutter Constr. Co. v. International Union of Operating Eng'rs*, 862 F.2d 641, 645 n. 16 (7th Cir.1988). This reasoning suggests that an employer cannot escape its obligations under one collective bargaining agreement by claiming that those obligations conflict with its obligations under another agreement. Accordingly, the ALJ's legal conclusion is reasonably based.

### III.

Throughout these proceedings, Immel has consistently maintained that it has acted solely in the interest of promoting an amica-

ble settlement and implied that the Board has dealt unfairly with it in seeking enforcement. For example, Immel argues that it refrained from filing exceptions to the ALJ's findings and recommendations because it wanted to "forge an amicable relationship with the [Operating Engineers]" and that the Board did not attempt to seek an amicable settlement because it sought enforcement without making formal findings that Immel was not complying with its order. However, these characterizations are simply inaccurate.

The Board has not acted unreasonably in seeking enforcement. Rather, the Board reviewed charges of unfair labor practices against Immel. Finding evidence to support them, the Board ordered Immel to redress these violations. For an extended period following the entry of this order, the Board attempted to negotiate an amicable settlement between itself, Immel and the Operating Engineers. After concluding that the parties could not reach such a settlement, the Board filed the instant petition seeking enforcement of its order. Because Immel waived its right to challenge the Board's order and because the Board's findings and legal conclusions are neither irrational nor inconsistent with the policies underlying the NLRA, we order the National Labor Relations Board order ENFORCED.