NATIONAL LABOR RELATIONS
BOARD, Petitioner,

v.

HUNTSVILLE MANUFACTURING
COMPANY, a subsidiary of M. Howenstein & Son, Inc., Respondent.

No. 74–3263.

United States Court of Appeals,
Fifth Circuit.

June 13, 1975.

Elliott L. Moore, Deputy Associate Gen. Counsel, Jane P. Schlaifer, Atty., N.L.R.B., Washington, D. C., Walter C. Phillips, Director, Region 10, N.L.R.B., Atlanta, Ga., for petitioner.

Mark L. Taliaferro, D. Frank Davis, Birmingham, Ala., for respondent.

Before GIBSON,* THORNBERRY and AINSWORTH, Circuit Judges.

GIBSON, Circuit Judge.

The National Labor Relations Board petitions for enforcement of its order reported at 211 N.L.R.B. No. 8 (1974), requiring respondent Huntsville Manufac-

* Of the Eighth Circuit, sitting by designation.

turing Co. to cease and desist from unfair labor practices. The Board adopted the findings, conclusions, and recommended order of its Administrative Law Judge in determining that the employer had violated § 8(a)(1) of the Act[1] by interrogation of employees concerning their union sentiments and threatening them with a loss of jobs if the union won the election.

The employer, a manufacturer of thread, employs over 1,000 employees at its plant in Huntsville, Alabama. In March, 1973, the union[2] began an organizing campaign which culminated in a Board-conducted election May 25, 1973. In that election 94 percent of the 1,090 eligible voters cast ballots; the union was defeated by 283 votes. Subsequently the union filed unfair labor practice charges alleging that during the organizing campaign the employer engaged in many instances of interference, restraint and coercion. After a hearing the Administrative Law Judge found that these interrogations were violative of the Act and his findings were adopted by the Board. We conclude that the Board's order is not supported by substantial evidence on the record as a whole and deny enforcement.

■ Employer interrogation concerning union sympathies may or may not be coercive depending upon the surrounding circumstances. The test is whether the questioning tends to be coercive, not whether the employees are in fact coerced. N.L.R.B. v. Varo, Inc., 425 F.2d 293, 298 (5th Cir. 1970); N.L.R.B. v. American Manufacturing Co., 132 F.2d 740 (5th Cir. 1943). Factors to be considered include:

(1) The history of the employer's conduct and attitude towards its employees; (2) the nature of the information sought—for example, did the interrogator appear to be seeking information on which to base action against individual employees; (3) the position or office of the interrogator in the company's hierarchy; (4) the place and method of interrogation—was the employee summoned to the boss' office, or was there an atmosphere of "unnatural formality?"; and (5) truthfulness of the reply.

N.L.R.B. v. Varo, Inc., *supra* at 298. *See also* N.L.R.B. v. Camco, Inc., 340 F.2d 803, 804 (5th Cir. 1965); Bourne v. N.L.R.B., 332 F.2d 47, 48 (2d Cir. 1964). This list is, of course, not definitive and intimidation may occur even if all these factors weigh in favor of the employer. N.L.R.B. v. Camco, Inc., *supra* at 804.

■ The Administrative Law Judge determined that the employer "engaged in a widespread campaign of interrogation" and further that it made "no showing that the interrogations were not more widespread than the General Counsel had proven and there is every reason to believe that they were." This finding erroneously placed the burden of proof on the Company to disprove an issue on which the General Counsel carried the burden. The Company argues that this language creates every reason to believe that the Administrative Law Judge's credibility findings and the finding of coercion were biased by his belief in a campaign of interrogation. While the Board expressly disavowed the statement concerning the employer's failure to show that the interrogations were not more widespread,[3] in all other respects it

1. National Labor Relations Act, 29 U.S.C. § 151 et seq. Section 8(a)(1), 29 U.S.C. § 158(a)(1) (1970), provides:
 (a) It shall be an unfair labor practice for an employer—
 (1) *to interfere with, restrain, or coerce* employees in the exercise of the rights guaranteed in section 157 of this title.

2. Communications Workers of America, AFL–CIO.

3. The Board stated that:
 We disavow the following statement of the Administrative Law Judge appearing in the text of his Decision under the heading, "The Objections"; "Further, Respondent makes no showing that the interrogations were not more widespread than the General Counsel has proven and there is every reason to believe that they were." In our view, the burden of proof does not shift to a respondent to prove that it has not violated the Act. Instead, the burden remains with the General Counsel to show the extent that violations have occurred.
 211 N.L.R.B. No. 8 (1974).

affirmed the findings and conclusions, including the "widespread campaign of interrogation."

 This finding of a "widespread campaign of interrogation" is without adequate support in the record; it rests merely upon suspicion or surmise, an inadequate basis. N.L.R.B. v. Fuchs Baking Co., 207 F.2d 737, 739 (5th Cir. 1953). Moreover, it is hard to believe that this finding did not supply much of the basis for the Administrative Law Judge's belief that the interrogations were coercive. Indeed, it may have been, as the employer argues, the basis for consistently crediting the General Counsel witnesses' accounts of the interrogations. However, it is not our function to decide the credibility of conflicting witnesses and we accept the Administrative Law Judge's credibility resolutions. N.L.R.B. v. Varo, Inc., *supra* at 297–98.

However, in accepting the findings as to the interrogations we are still left with the fact that at most 10 employees were questioned. The question most frequently asked was "what do you think of the union?" and generally occurred in conversations with the employee's immediate supervisor. These incidents must be placed in the context of a three-month organizing campaign of a total workforce of over 1,000 employees and in which any other incidents of an "anti-union animus" are noticeably absent.[4]

Further militating against the Board's conclusion that the questioning was coercive is the generally innocuous nature of the questions asked and that the "interrogations" were in employee working or break areas. The questions on the whole were permissible under § 8(c), 29 U.S.C.

§ 158(c) (1970),[5] were asked by low-echelon supervisors, most of whom were in daily contact with the employees questioned, and there was no testimony that any of the employees were purposely evasive in their answers. Nor are we persuaded that there were "threats of reprisal" in this case violative of the Act. In two instances the Administrative Law Judge found that supervisors had indicated that jobs would be lost if the union won the election with references to the experience of Lincoln Mills 20 years ago. This appears to be a factual statement, not a threat. Additionally one employee testified that he was advised to get his brother off the handbill line. The decision in Salinas Valley Broadcasting Corp. v. N.L.R.B., 334 F.2d 604 (9th Cir. 1964), seems particularly apposite to the Board's findings in this case. The court stated:

> Neither mere inquiry by employer of employees without harassment or undue frequency, as to the fact of the existence of a plan to unionize, nor a single somewhat vague prediction of anticipated loss of economic benefits can be transformed or transmuted by the magic of semantic labels into "repeated interrogations" or "threats of economic reprisals," sufficient to swing the balance against the other facts in the record.

334 F.2d at 614. *See also* N.L.R.B. v. Armour & Co., 213 F.2d 625, 627–28 (5th Cir. 1954).

 Accordingly, we hold that the Board's order is not supported by substantial evidence on the record as a whole. Enforcement of the Board's order is hereby denied.

---

4. We would note here that the Board apparently equates in this case an employer's opposition to the union with an anti-union animus. The Act does not mandate that employers willingly embrace union representation of their employees nor do we think that opposition to a union can be converted into an anti-union animus without some proof, absent here, that the employer engaged or has engaged in the past in a pattern of conduct hostile to unions.

5. We think that in the enforcement of the Act care should be taken to not render nugatory or

meaningless the right of management to converse with employees as prescribed in § 8(c) of the Act, which states:

> The expressing of any views, argument, or opinion, or the dissemination thereof, whether in written, printed, graphic, or visual form, shall not constitute or be evidence of an unfair labor practice under any of the provisions of this subchapter, if such expression contains no threat of reprisal or force or promise of benefit.