**PACECO, a Division of Fruehauf Corporation, Petitioner Cross-Respondent,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent Cross-Petitioner.**

No. 78–3108.

United States Court of Appeals, Fifth Circuit.

Aug. 22, 1979.

█

---

Jolly, Miller & Milam, Kenneth E. Milam, James R. Lockard, Jackson, Miss., for petitioner cross-respondent.

Elliott Moore, Deputy Assoc., Gen. Counsel, John G. Elligers, Michael Hamilton, Attys., N. L. R. B., Washington, D. C., for respondent cross-petitioner.

Before GOLDBERG, FAY and RUBIN, Circuit Judges.

ALVIN B. RUBIN, Circuit Judge:

Paceco, a division of Fruehauf Corporation, seeks review, and the NLRB counters, seeking enforcement, of an order issued against the company as a result of findings that it had violated Section 8(a)(1) of the National Labor Relations Act, 29 U.S.C. § 158(a)(1), by coercive interrogation of employees prior to a union election, and by maintaining an overly broad no-solicitation rule. Because the Board failed to set forth the legal standards by which it determined that the interrogation was coercive, we vacate and remand the case for more specific findings on that point. We agree with Paceco that the order of the Board regarding the no-solicitation rule is overly broad, and remand for modification of the order to eliminate any suggestion that the company cannot prohibit solicitation during working time.

## I.

Beginning on August 28, 1975, the Sheet Metal Workers' International Union launched an organizational drive and election campaign at Paceco, culminating in a rerun representation election on February 13, 1976. On February 12, employee Joel Childress was asked by his supervisor, Rip Bowling, while at his workplace, how he was going to vote. Bowling stated that the response "really doesn't matter to me. I got people in my shop right now under me that's going Union . . . I won't hold it against you." Childress replied that it was none of Bowling's business how he was going to vote. Later in the conversation Bowling asked Childress if the employees really needed a union. Childress stated, "Maybe [they don't] need this particular Sheet Metal Union but [they do] need a union."

On the day of the election Ralph Taylor, an employee known by the company to have been against the union and active in the anti-union campaign, came to work wearing a pro-union button. One of his supervisors, Willard Ustruck, asked Taylor when he had decided to wear the button, and Taylor responded that he had made the decision several days earlier. When asked why he had changed his mind, Taylor said that there were several reasons. Ustruck told Taylor that he should think seriously about his choice, and Taylor stated that he had done so.

Following this conversation another company supervisor, Leonard Holmes, called Taylor into his office and asked him why he had changed his mind after "being for the company for so long." Taylor said that he believed the company president had lied to employees about wages and contract terms. The meeting concluded with a 45 minute talk between Taylor and the company president.

Reversing the Administrative Law Judge, the NLRB found that the questioning of the two employes by the three supervisors "reasonably tend[ed] to interfere with the free exercise of an employee's Section 7 rights" and was therefore "coercive" in violation of Section 8(a)(1). To support this conclusion the Board noted that "an interrogation of an employee's union sympathies or his reasons for supporting a union need not be uttered in the context of threats or promises in order to be coercive. The probing of such views, even addressed to employees who have openly declared their pro-union sympathies, reasonably tends to interfere with the free exercise of employee rights under the Act, and, consequently, is coercive." Moreover, "An inquiry into an employee's views toward a union or unionization in general, even ocenstensibly [sic] questioned 'out of curiosity' and in the context of assurances against reprisals, reasonably tends to interfere with the free exercise of an employee's Section 7 rights, regardless of the employee's subjective state of mind." In a footnote the Board summarized its legal standard: "The test is whether the employer engaged in conduct which, it may reasonably be said, tends to interfere with the free exercise of employee rights under the Act," quoting American Freightways Co., 1959, 124 NLRB 146, 147.

While it is correct as a general proposition that "[o]nly when the interrogation tends to restrain, coerce, or interfere with

employees in the exercise of their rights under the Act is such interrogation proscribed by Section 8(a)(1)," *NLRB v. Sunnyland Packing Co.,* 5 Cir. 1966, 369 F.2d 787, 793; *see also Ridgewood Management Co. v. NLRB,* 5 Cir. 1969, 410 F.2d 738, 740, *cert. denied,* 396 U.S. 832, 90 S.Ct. 87, 24 L.Ed.2d 83; *NLRB v. J. Weingarten, Inc.,* 5 Cir. 1964, 339 F.2d 498, 500, we find the mere recital of that general standard without more too cryptic to permit us to determine whether there is substantial evidence to support the Board's conclusions. *See Universal Camera Corp. v. NLRB,* 1951, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456.

The Board is not without ample authority for determining whether the particular contacts in this case have the effect of interfering with the employees' Section 7 rights. The factors to be considered were originally set forth in *Bourne v. NLRB,* 2 Cir. 1964, 332 F.2d 47, 48, as follows:

(1) The background, i. e. is there a history of employer hostility and discrimination?

(2) The nature of the information sought, e. g. did the interrogator appear to be seeking information on which to base taking action against individual employees?

(3) The identity of the questioner, i. e. how high was he in the company hierarchy?

(4) Place and method of interrogation, e. g. was employee called from work to the boss's office. Was there an atmosphere of "unnatural formality"?

(5) Truthfulness of the reply.

These factors were adopted and augmented by this court in *NLRB v. Camco, Inc.,* 5 Cir. 1965, 340 F.2d 803, 804, *cert. denied,* 382 U.S. 926, 86 S.Ct. 313, 15 L.Ed.2d 339, which drew the following additional factors from Bok, The Regulation of Campaign Tactics in Representation Elections under the National Labor Relations Act, 78 Harv.L.Rev. 38, 107 n.2 (1964):

(6) whether the employer had a valid purpose for obtaining information on union strength;

(7) whether such purpose was communicated to the employees interrogated; and

(8) whether the company personnel gave the employees any assurances that they would not be subject to reprisals.

*Compare Florida Steel Corp. v. NLRB,* 5 Cir. 1976, 529 F.2d 1225; *NLRB v. Birdsall Construction Co.,* 5 Cir. 1973, 487 F.2d 288; *NLRB v. Spartus Corp.,* 5 Cir. 1973, 471 F.2d 299; *NLRB v. Varo, Inc.,* 5 Cir. 1970, 425 F.2d 293, 298 *with Federal-Mogul Corp. v. NLRB,* 5 Cir. 1978, 566 F.2d 1245, 1249–52; *Mueller Brass Co. v. NLRB,* 5 Cir. 1977, 544 F.2d 815, 820–21; *NLRB v. Huntsville Manuf. Co.,* 5 Cir. 1975, 514 F.2d 723. *See also Utrad Corp. v. NLRB,* 7 Cir. 1971, 454 F.2d 520; *NLRB v. Hill & Hill Truck Line, Inc.,* 5 Cir. 1959, 266 F.2d 883, 886.

■ The Board may have applied these factors in reaching its conclusion that Paceco violated Section 8(a)(1), but its opinion provides no basis for an appellate court to determine whether or not it did, or to evaluate the substantiality of the evidence to support each factor. We are, therefore, unable to review its decision.

When questioned about this matter on oral argument, counsel for the Board rejoined that the Board had such a vast volume of work that it could not write a law review article on each case. Certainly we do not expect a dissertation, but we cannot perform our duty of appellate review without a sufficient exposition both of the facts found and the legal standards considered applicable. These may be brief, but some adequate statement of each is indispensable.

We therefore vacate this part of the Board's order, and remand for more specific findings and conclusions in accordance with prior authority. If Paceco then wishes to pursue this appeal, the case will be entertained by this panel, which retains jurisdiction for that purpose.

## II.

■ The company rules in effect at the time of the election campaign regarding solicitation by employees provided as follows:

Plant Rule 17: Conduct yourself properly while on company time. Do not engage in unnecessary conversation, loitering, selling in any form, circulation of petitions, balloting, distribution of handbills or literature or solicitations without prior approval of your supervisor.

"Solicitations" from Employee Information Handbook:

Frequent fund raising solicitations are distasteful to all concerned. Accordingly, the only solicitation permitted in the plant is the United Fund.

The NLRB reasonably concluded that these rules regulating solicitation could be interpreted as precluding, in contravention of Section 8(a)(1), union solicitation on company premises during non-working hours. *Republic Aviation Corp. v. NLRB,* 1945, 324 U.S. 793, 65 S.Ct. 982, 89 L.Ed. 1372; *Florida Steel Corp. v. NLRB,* 5 Cir. 1976, 529 F.2d 1225, 1230. The potential inhibitory effect of the rules, even if they were not enforced, justifies Board action. *See, e.g., Utrad Corp. v. NLRB,* 7 Cir. 1971, 454 F.2d 520, 523–24; *NLRB v. Beverage-Air Co.,* 4 Cir. 1968, 402 F.2d 411, 419.

The company admits that the rules may have been in "technical contravention of the Act," and its effort to rewrite them is commendable, but neither the admission nor the attempted correction obviates the need for the Board to find a violation and order a remedy. As this court stated in *NLRB v. Southern Household Products Co.,* 5 Cir. 1971, 449 F.2d 749, 750 (footnote omitted), "[c]onciliatory action by an employer before enforcement of the Board's order does not render enforcement proceedings moot. . . . [E]nforcement of the order provides an incentive for continued compliance through the possible sanction of contempt proceedings for violations."

We agree with Paceco, however, that the Board's order regarding the no-solicitation rules is overly broad. The cease and desist order promulgated by the Board states:

[The Company shall] [t]ake the following affirmative action necessary to effectuate the policies of the Act:

(a) Rescind its rules which provide that employees may not solicit in its plant during company time.

This order could be read to deny Paceco the power to regulate even non-union solicitation, or to restrict union solicitation to non-working company time. Paceco has every right to prohibit union solicitation during actual working time, and can prohibit other solicitation at all times. QIC Corporation, 1974, 212 NLRB 63.

The Board has stated that it never intended to require any more than the elimination of unlawful restrictions on union solicitation during non-working company time. We therefore remand the order to the Board for modification of the language to reflect this limited goal.

The order of the Board is vacated in part, and remanded for modification in part, and for further findings and conclusions as herein required. Jurisdiction is retained pending disposition by the Board.